No. 50,005

STATE OF KANSAS, *Appellee,* v. FRANK R. WILLIAMS, JR., *Appellant.*

(595 P.2d 1104)

Opinion filed June 9, 1979.

*Daniel S. Garity,* of Wichita, argued the cause and was on the brief for the appellant.

*Robert J. Sandilos,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal by Frank R. Williams, Jr. from a jury conviction of aggravated robbery.

The facts and details of the crime are not at issue on appeal and can be summarized briefly as follows:

On December 16, 1977, at 1:10 P.M., the Household Finance Co., 8029 Peach Tree Lane, Wichita, Kansas, was robbed of $370.80 by two black males armed with guns. The victim, office manager Michael F. Duncan, identified the defendant from police photographs shown him shortly after the robbery. The defendant was arrested at his place of employment. After being advised of his rights, the defendant told the police he was forced by one Angelo Walker to accompany him to the Finance office, where Walker and a Jimmy Carroll committed the robbery.

Eric Bruce, a Wichita, Kansas, attorney, was appointed to defend Williams. Mr. Bruce represented the defendant, without apparent antagonism, through the preliminary hearing and argument on defendant's motion to suppress. The case was set for trial on February 27, 1978, at which time defendant requested permission to appear pro se and applied for a continuance.

Contemporaneously, Bruce requested permission to withdraw from the case.

The court granted appellant's request to appear pro se with Bruce as co-counsel, denied the application for a continuance and denied Bruce's request to withdraw. Williams and Bruce tried the case as co-counsel. Williams was convicted and brings this appeal.

Appellant argues four issues of error. He first contends his waiver of right to counsel was void as it was not knowingly and intelligently made and thus not voluntary.

Appellant concedes that he requested he be permitted to try the case pro se but argues his request was not knowingly and intelligently made in conformity with the standards enunciated in *Faretta v. California,* 422 U.S. 806, 835, 45 L.Ed.2d 562, 95 S.Ct. 2525 (1975), where the court stated:

"Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'."

See also *State v. Cunningham,* 222 Kan. 704, 706, 567 P.2d 879 (1977), where the court said:

"[T]he critical question does not pertain to the extent of defendant's legal knowledge, but whether he has properly been made aware of the dangers and disadvantages of self-representation—so that the record will establish that he understands what he is doing and has made his choice with his eyes open."

In *State v. Daniels,* 2 Kan. App. 2d 603, 586 P.2d 50 (1978), the court was faced with a criminal defendant who had not been informed of his right to have counsel appointed for him. In addition to stating that a defendant must be informed of his right to counsel pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), the court stated that a "trial court must make more than a routine inquiry when a defendant attempts to waive the right to counsel. [Citation omitted.] A waiver is an *intentional* relinquishment of a *known* right, made with full awareness of the effect." *State v. Daniels,* 2 Kan. App. 2d at 607. The Court of Appeals then offered guidelines for a trial court in determining whether a defendant has knowingly and intelligently waived his right to counsel. *State v. Daniels,* 2 Kan. App. 2d at 607-608:

"The ABA Standards Relating To the Function of the Trial Judge, [citation omitted], suggest the trial judge's inquiry show that the defendant:

'(*i*) has been clearly advised . . . of his right to the assignment of counsel when he is so entitled;

'(*ii*) possesses the intelligence and capacity to appreciate the consequences of this decision; and

'(*iii*) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.'

"To that, we would suggest that the trial judge also inform the defendant (1) that defendant will be held to the same standards as a lawyer; (2) that the trial judge may not aid the defendant in his defense; and (3) that it is advisable to have a lawyer due to the specialized knowledge necessary to conduct a trial and the fact that a lawyer is trained in the law."

Let us now turn to the case at hand and examine the evidence to see if it can be determined, in the light of the foregoing guidelines, whether Williams knowingly and intelligently waived his right to counsel. The following colloquy occurred between appellant and the trial judge:

"THE COURT:   In the case of the State of Kansas versus Frank R. Williams, Jr., 77CR2759, the Court understands, Mr. Williams, you are in custody. For the record, you are Frank R. Williams, Jr.?

DEFENDANT WILLIAMS:   Yes, sir.

THE COURT:   And that you are in custody?

DEFENDANT WILLIAMS:   Yes, sir.

THE COURT:   And, for the record, let it be known that Nola Moore represents the State and Mr. Eric Bruce, Eric D. Bruce has been appointed to represent you as I understand from the docket call—

DEFENDANT WILLIAMS:   Yes.

THE COURT:   — that you wish to represent yourself pro se?

DEFENDANT WILLIAMS:   Yes, Your Honor.

THE COURT:   Do you know what that means?

DEFENDANT WILLIAMS:   Yes, I know what it means.

THE COURT:   Have you ever sat through a trial of a case?

DEFENDANT WILLIAMS:   No, sir.

THE COURT:   Do you know what I mean when I say that you must follow the rules of evidence, statutory, and that also the criminal procedure; do you understand that?

DEFENDANT WILLIAMS:   Well, I understand that you do want me to follow the rules of the Court, yes, I do.

THE COURT:   And that you wish to represent yourself pro se?

DEFENDANT WILLIAMS:   Yes, Your Honor, and —

THE COURT:   Tell me why you want to represent yourself pro se?

DEFENDANT WILLIAMS:   I feel that, you know, I was—I was told some things by my attorney, you know, and about my chances in this case and I feel that it's very negative of what he says about my chances and I felt that due to the fact

that these things was said that, that if we did go to Court that it wouldn't be followed through to the extreme the way I would like it to be followed.

MR. BRUCE: Your Honor, in light of Mr. Williams' statements, I would like to reiterate my motion to withdraw as his counsel in this case on the record.

THE COURT: I'm going to reserve my opinion on that. Do you know what I mean by voir dire, Mr. Williams?

DEFENDANT WILLIAMS: No, I don't, Your Honor.

THE COURT: Do you know what the Court means by admissible evidence?

DEFENDANT WILLIAMS: Admissible evidence? Yeah, that's the evidence that can be used.

THE COURT: Do you know what the elements of this crime of which you are charged are?

DEFENDANT WILLIAMS: Yes, I do.

THE COURT: What are they?

DEFENDANT WILLIAMS: Minimum of five years, maximum of life.

THE COURT: It's apparent to the Court, Mr. Williams, that you are not in a position to represent yourself because of the questions that you have answered, that I have just very briefly given to you in this hearing back in chamber.

DEFENDANT WILLIAMS: Yes, sir.

THE COURT: There are certain rules of evidence and procedure that must be followed in court and if you insist upon representing yourself pro se, I will do the best I can to have you follow those things. But, if you don't know what they are, you are going to run into problems; do you realize that?

DEFENDANT WILLIAMS: Yes, Your Honor, I do.

THE COURT: You are going to run into serious problems. Have you ever selected a jury before or anything of that nature?

DEFENDANT WILLIAMS: No, I —

THE COURT: Would you like to have the assistance of Mr. Bruce during this trial?

DEFENDANT WILLIAMS: Yes, I would and, also, Your Honor —

THE COURT: Then, I will have him sit with you as counsel. From what you have told me, you stated that you don't think he will fight as hard for you, is that correct?

DEFENDANT WILLIAMS: Yes, sir. I also, when I was at —

THE COURT: Do you wish to have me appoint him to sit there and assist you in this trial?

DEFENDANT WILLIAMS: Yes, sir.

THE COURT: Then, the Court will overrule your motion and you will sit as co-counsel with Frank R. Williams, Jr., during the course of this trial and you will be the one that will represent yourself pro se. Anytime you need to know anything regarding the rules of evidence, a question, or something of this nature, legally, turn to Mr. Bruce and ask him; do you understand that?

DEFENDANT WILLIAMS: Yes, sir.

THE COURT: You are doing this voluntarily on your own, that you want to represent yourself?

DEFENDANT WILLIAMS: Yes, yes I am, Your Honor. But, excuse me, If I say — but I feel that, you know, that the Judge Helsel that was — that I went to docket call in front of, due to the fact that I am representing myself, I felt that I

should have had some time to learn a little bit more about the law than what I did and instead, he just told me I have to go to trial today, and, you know, *Arre v. Johnson* (Phonetic), I was going to make a motion to be able to go to trial with, with my chance to be able to find out more about what I should do. Like you said, I didn't ask the real questions properly, but if I had my head in some law books and something, maybe I could have.

THE COURT: Well, this Complaint or Information was filed on December 19, 1977.

DEFENDANT WILLIAMS: Yes, sir.

THE COURT: And there is a statute that prohibits us upon our own — upon your own motion, you could have more time. But, we have to see that these cases are tried within 90 days. So that's the purpose of wanting you to go to trial immediately and to give you a speedy trial. So, the case must be moved along. We can't wait until you go to law school and learn how to be a lawyer; you understand that?

DEFENDANT WILLIAMS: Well, I didn't need that much time.

THE COURT: Well, okay. It's up to you to decide whether you want Mr. Bruce, his full participation, or want him — I'm going to have him there advising you whether you want it or not because from the questions that I have asked you, I understand that you do not understand, fully, some of the procedural and evidentiary matters. So, I'm giving his services to you and let you do what you want to do in that regard. Do you understand, fully, what I'm doing?

DEFENDANT WILLIAMS: In other words, he is going to be there, not to represent me, but to give me advice, in other words.

THE COURT: At any time you want advice, that is correct.

DEFENDANT WILLIAMS: Okay, would he — but there is no way he could represent me?

THE COURT: You are representing yourself as you have stated you want to do.

DEFENDANT WILLIAMS: Okay, right.

THE COURT: Now, if you change your mind at any course during the trial, do not state so in front of the Jury, but let me know.

DEFENDANT WILLIAMS: Call a recess?

THE COURT: Through Counsel, so that —

DEFENDANT WILLIAMS: Okay.

THE COURT: — he can take over representing you because I found many times that they find that maybe they do want somebody to represent them. But, that's up to you.

DEFENDANT WILLIAMS: Well, you know, I mean —

THE COURT: It's your course that you are setting and it's your prerogative to represent yourself, if you want to. But, I'm having Counsel there to advise you on your legal rights; do you understand that?

DEFENDANT WILLIAMS: Yes, sir."

Obviously, the guidelines were not as carefully adhered to as one might desire, but it should be remembered *State v. Daniels,* 2 Kan. App. 2d 603, had not yet been decided on the date of the trial. Williams had gone through the preliminary hearing and an

argument on a motion to suppress with Bruce as counsel. From that, he knew something of the function of a lawyer but when Bruce expressed pessimism as to the outcome of the trial appellant decided to act as his own counsel. The trial judge established by his inquiry that Williams wanted to try his own case; that he knew very little about a trial; no rules of evidence; nothing about voir dire; nothing about the elements of the crime; that the court wouldn't help him; that he needed a lawyer; that he knew the range of punishment in case of conviction.

Though not a perfect inquiry it appears the trial court adequately advised appellant of the hazards and difficulties of a trial for him to knowingly, willingly and intelligently waive his right to trial counsel. This conclusion is confirmed by appellant's statement after the trial when questioned by Mr. Bruce.

"MR. BRUCE:  Frank, how do you feel about my representation of you in this case?

DEFENDANT WILLIAMS:  I have no complaints of his — of his co-counseling in this case.

MR. BRUCE:  Do you think I have done an adequate job?

DEFENDANT WILLIAMS:  I feel that he has done an adequate job as my co-counsel."

Appellant next contends he should have had substitute counsel appointed for him. The argument is without merit. Appellant did not request substitute counsel; he requested to represent himself. For the court to appoint counsel where not requested would fly in the face of *Faretta v. California,* 422 U.S. 806, where the court considered the question of whether a criminal defendant may have the assistance of counsel forced upon him or her by the state and concluded the state may not force such assistance upon defendant. The court said:

"[I]t is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a state may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them."

And to further fortify this position we note that after the discussion with the trial court, appellant accepted Eric Bruce as his co-counsel. This indicated there were no irreconcilable conflicts between attorney and client. The court had no reason to make further inquiry in light of the quoted reason appellant gave for wanting to represent himself. He stated Bruce had been

pessimistic about his chances of winning the case and he, therefore, didn't think he would try it to the "extreme" he desired. In *Brown v. United States,* 264 F.2d 363, 369 (D.C. Cir. 1959) (Burger, C.J., concurring in part) the court found, "Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism."

The trial court had no authority to appoint substitute counsel in the absence of good cause being shown. (*State v. Banks,* 216 Kan. 390, 532 P.2d 1058 [1975]). Good cause was not shown by appellant.

Appellant next complains of the trial court's refusal to sustain his motion for a continuance.

The motion for a continuance was made immediately following action on appellant's motion to appear pro se. The trial date had been scheduled for some time. The jury panel was present and waiting. The trial judge appointed Eric Bruce co-counsel for Williams, sustained his motion to appear pro se then denied his motion for a continuance stating as a reason that the 90 day speedy trial time was about to run. The reason was wrong. Williams was arraigned on February 1, 1978, and the trial date was February 27, 1978.

Not only was the statement concerning the 90 day requirement wrong but also the defendant-appellant was the applicant thereby waiving his right to a speedy trial. (K.S.A. 1978 Supp. 22-3402; *State v. Powell,* 215 Kan. 624, 527 P.2d 1063 [1974].)

It is well established law of Kansas that the granting of continuances lies within the sound discretion of the trial court. *State v. Nelson,* 223 Kan. 251, Syl. ¶ 1, 573 P.2d 602 (1977). And further, the action of the trial court will not be disturbed on appeal absent a showing of abuse of discretion.

The question raised is whether the use of the wrong reason by the trial court for denying appellant's application for a continuance constitutes abuse of discretion. We think not. Admittedly, were the speedy trial mandate the sole reason for denying the application for a continuance, it would be abuse of discretion if the reason were incorrect. Such is not the case. The trial date had been set for some time; the jury panel was waiting in the jury room; the docket was crowded; the witnesses had been subpoenaed; the prosecution staff was present and ready for trial; appellant presented no evidence of abuse of discretion; and ap-

pellant accepted attorney Bruce as co-counsel eliminating his need of time for preparation. We find the trial court did not abuse its discretion in denying appellant's application for a continuance.

Appellant next contends he was denied due process because he was denied access to legal material and lay assistance. Both of these contentions are without merit. Appellant had access to a library and legal material through his co-counsel, Eric Bruce. *Bounds v. Smith,* 430 U.S. 817, 828, 52 L.Ed.2d 72, 97 S.Ct. 1491 (1977), held:

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."

The court complied with this admonition by the appointment of attorney Bruce as co-counsel.

Appellant relies on *Johnson v. Avery,* 393 U.S. 483, 21 L.Ed.2d 718, 89 S.Ct. 747 (1969), as authority for requesting lay assistance. The Supreme Court held that convicts clearly have the right to assistance from "jailhouse lawyers" in the preparation of writs of habeas corpus. In this case Williams didn't need lay assistance, he had a lawyer as his assistant. The lay assistant provision is applicable as a substitute only where legal assistance is not available.

Judgment of the trial court is affirmed.