293 A.2d 901.

STATE *vs.* MANUEL P. JARDINE.

AUGUST 9, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

492

■ ■ ■

KELLEHER, J. On May 31, 1968, at approximately 5:30 a.m., Michael Lembo was notified by the Providence Police Department of the discovery of a break at his tailor shop. Some four hours later, a squad of detectives acting on a tip went to Whelan Road, one of the streets located in the Hartford Park Housing Project. One group of detectives, under the command of Lieutenant William J. Lawton, approached an apartment located at 19E Whelan Road. The apartment door was ajar. When the lieutenant looked through the open door, he observed 45 men's suits scattered over a sofa and a chair. The apartment, while unoccupied, was leased to Anita Silva. The officer began carrying the suits out of the apartment to a waiting police car. The suits were a portion of over 200 suits stolen in the break.

Another group of detectives, under the command of Lieutenant Vincent J. O'Connell, proceeded to 19D Whelan Road and knocked at the door. The apartment located at this address had been leased to Constance Faiola. She was Jardine's girlfriend. Lieutenant O'Connell's knock brought Jardine and his girlfriend to the door. The defendant came out onto the sidewalk. As the lieutenant was affording defendant his Miranda warnings, Jardine saw the suits being transferred to the police vehicle. At this point, he allegedly shouted at Lieutenant Lawton, "Hey, where are you going with my suits?"

Jardine was indicted on a charge of receiving stolen goods —a violation of G. L. 1956, §11-41-2. A Superior Court jury returned a verdict of guilty. The trial justice denied the motion for a new trial. In his appeal defendant presses but

two exceptions, both taken to certain evidentiary rulings made by the trial justice.

The first exception relates to the denial of defendant's motion to suppress the evidence of 45 suits taken during a warrantless search of Anita's apartment. The motion was heard during the time Lieutenant Lawton was on the witness stand. The trial justice denied the motion because he found defendant had failed to establish his standing to challenge the alleged unlawful search of Apartment 19E. We affirm this finding.

In *Jones* v. *United States*, 362 U. S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960), the defendant was charged with a crime where proof of possession could result in a conviction. There, as in the case at bar, the accused neither alleged nor established a possessory interest in the premises searched or the property seized. Pressing a motion to suppress presented the accused with a dilemma. If he admitted possession so that he could establish the standing, then the prosecution might have offered that admission against him at the trial as evidence of the crime alleged. *Jones* gave an "automatic" standing to one charged with a crime where possession is an essential element of the offense thereby allowing a challenge to the seizure of those goods. It said in *Jones*, 362 U. S. at 263, 80 S.Ct. at 732, 4 L.Ed.2d at 703:

> "The same element in this prosecution which has caused a dilemma, *i.e.*, that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged."

The Court also recognized that an accused may have standing either because he has an "interest" in the *object seized* or an "interest" in the *place searched*. Justice Frankfurter, in speaking of the accused and his relationship to the premises searched, eschewed the use of such terms as "lessee," "lessor," "invitee" and "guest" and gave standing

to all who are legitimately on the subject premises when he wrote:

> "No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. *This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched.*" (emphasis added) *Jones* v. *United States,* 362 U. S. at 267, 80 S.Ct. at 734, 4 L.Ed.2d at 706.

Since *Jones,* the Supreme Court has said that the fourth amendment protects not places but persons whose "interest" gives rise to a reasonable expectation on their part of freedom from governmental intrusion. *Mancusi* v. *DeForte,* 392 U. S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Katz* v. *United States,* 389 U. S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Alderman* v. *United States,* 394 U. S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), fourth-amendment rights were described as personal rights which cannot be vicariously asserted. *Simmons* v. *United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), holds that whenever a defendant testifies at a suppression hearing, his testimony may not be used against him at the trial upon the merits.

The *Jones'* case is factually inapposite to Jardine's predicament. There was evidence in *Jones* that the accused was using the apartment in question with the consent of the owner. Here, of course, defendant offered not one shred of testimony to show under what authority the suits had been stored in Anita's apartment. He had the burden of showing that he had the standing to challenge the admissibility of the seized evidence. *United States* v. *Sacco,* 436 F.2d 780 (2d Cir. 1971); *Fullbright* v. *United States,* 392 F.2d 432 (10th Cir. 1968). Under the *Simmons'* rule, he could have testified without any fear that his testimony

could be used against him. Anita, who was not present when the suppression motion was considered, did testify as a defense witness. In direct examination, she emphasized that Jardine neither had permission to use her apartment nor had he been given a key to the premises. In fact, Anita said she had not occupied the apartment during May, 1968, because she was living with friends in another section of Providence.

The sole purpose for giving automatic standing to an accused possessor has been done away with by the *Simmons'* decision.[1] The first of the alternative grounds for giving standing in *Jones* has been eliminated. It is pure surplusage. *Palmer* v. *State*, 14 Md. App. 159, 286 A.2d 572 (1972). However, no matter what pronouncements have been made regarding an accused's standing to challenge a police search, we do not believe that the Supreme Court has, as yet, extended the requisite standing to an interloper, a trespasser or one who should have no reasonable expectation of privacy in the premises occupied by Anita. *See State* v. *Holloway*, 187 Neb. 1, 187 N.W.2d 85 (1971). Furthermore, defendant made no effort to establish any possessory or proprietary interest in the evidence seized by the police. To the contrary, one of his witnesses testified that Jardine told the officers that the suits did not belong to him. In order to prevail on his motion to suppress, defendant had to establish that he was the victim of an unwarranted invasion of his right to privacy. This he failed to do and his exception to the denial of his motion to suppress is overruled.

The remaining exception concerns the trial justice's over-

---

[1] At its last session, the Supreme Court, because of an incomplete record, passed up an opportunity to reexamine the first alternative holding in *Jones* v. *United States*, 362 U. S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). *Combs* v. *United States*, 408 U. S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972). Some courts still afford ipso facto standing to one charged with a possessory crime. *United States* v. *Pastore*, 456 F.2d 99 (2d Cir. 1972), *contra, United States* v. *Combs*, 446 F.2d 515 (6th Cir. 1971).

ruling defendant's objection to permitting Lieutenant Lawton to tell the jury that Jardine had shouted to him, "Hey, where are you going with my suits?" In pressing this exception, defendant relies on an excerpt from *State v. Boswell*, 73 R. I. 358, 56 A.2d 196 (1947), where we said that in absence of some corroborative evidence tending to prove the corpus delicti, a confession or self-incriminating statement is inadmissible because an unsupported confession is insufficient to prove the corpus delicti. This is no dispute with that principle. However, we have ruled that it is not necessary to establish the so-called corpus delicti beyond a reasonable doubt before an admission can be received into evidence. *State v. Mantia*, 101 R. I. 367, 223 A.2d 843 (1966); *State v. Wheeler*, 92 R. I. 389, 169 A.2d 7 (1961); *State v. Jacobs*, 21 R. I. 259, 43 A. 31 (1899).

Here, there was evidence, apart from Jardine's shout, that showed evidence that the crime charged had been committed. Lembo testified that when he terminated his business activities on May 29, 1968, the clothing racks were full. His post-theft inventory showed a substantial loss of goods. Forty-five of his missing suits were found in Anita's apartment. Jardine's shouted message merely indicated the identity of their possessor. The defendant's exception is overruled.

The defendant's exceptions are overruled and the case is remanded to the Superior Court.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline, John F. Cicilline*, for defendant.