**STATE**

v.

**Albert CORTELLESSO and Martin DiRaimo.**

No. 78–113–C.A.

Supreme Court of Rhode Island.

July 8, 1980.

Reargument Denied Sept. 4, 1980.

Dennis J. Roberts, II, Atty. Gen., David A. Cooper, Sp. Asst. Atty. Gen., for plaintiff.

Coia, Jackvony & Shapira, Anthony T. Jackvony, Providence, for defendants.

## OPINION

DORIS, Justice.

This is an appeal by the defendants Albert Cortellesso (Cortellesso) and Martin A. DiRaimo (DiRaimo) from judgments of conviction in the Superior Court on charges of receiving stolen goods, a violation of G.L. 1956 (1969 Reenactment) § 11–41–2.

At approximately midnight on June 11, 1976, while on patrol, Detective Louis Narciso (Narciso), of the North Kingstown police department observed a refrigerator trailer, without a tractor attached, parked next to a North Kingstown meat market, known as Rudy's Market. Noting that the trailer had an out-of-state license plate and that its refrigerator unit was running, Narciso decided to investigate. He located a metal box underneath the front of the trailer and unlatched and unhinged it, removing registration papers. After noting that portions of the trailer had been freshly painted, he compared the trailer's license-plate number with the information contained in the registration papers and determined that they were different. Narciso notified police headquarters of this information and was in turn promptly informed that the trailer was listed as having been stolen a few days earlier from Massachusetts. Narciso then returned to police headquarters where he obtained a bolt cutter, which he used to cut a lock off the trailer doors. Upon opening the trailer doors, he discovered sides of beef inside the refrigerated unit. Narciso then called for assistance and staked out the trailer.

At approximately 7:45 a. m. on the same day, Narciso testified that he observed defendants drive by Rudy's Market a few times in a large shiny black car and then stop at the meat market. Cortellesso then entered the meat market, exiting a few minutes later with the market's owner. They proceeded to the trailer where they climbed into the back for a few minutes. Cortellesso then returned to his car and drove off.

At approximately 11 a. m. defendants returned to the meat market in a small old car. The defendants entered Rudy's Market where Narciso had now positioned himself dressed as an employee. Narciso testified that Cortellesso said they would sell the meat to the meat market for $22,000 and that "we got it from some Irish kids in Boston and they don't mess around, they want their money." Following this conversation, defendants, the owner of the meat market and Narciso (still undercover) proceeded to the trailer. When Cortellesso picked up a side of beef, the police arrested both him and DiRaimo.

At trial Cortellesso testified that he and DiRaimo had gone to the meat market not to sell the meat but to buy it. He explained that he had not picked up the meat on his first trip to the store because he had not wanted to dirty his shiny new car with the bloody sides of beef. Cortellesso denied having made any statement regarding his obtaining the meat from "Irish kids."

On October 4, 1976, defendants filed a motion to suppress the trailer, the registra-

tion papers removed from the trailer's metal box, and the sides of beef and a motion to dismiss the indictments on the ground that they were based on "unauthorized, illegal and unlawfully seized evidence." The Superior Court denied both these motions. The jury found each defendant guilty of two counts of receiving stolen goods. The trial justice denied defendants' motion for a new trial. They are now appealing their judgments of conviction to this court.

The defendants raise several issues on appeal. They claim that the warrantless search of the trailer violated their Fourth Amendment rights against unreasonable searches and seizures. They also argue that the prosecutor violated their Fifth Amendment right against self-incrimination by asking them why they had not told the police their version of the incidents before trial. The defendants further argue that the trial justice erred in denying their motion for judgment of acquittal and in allowing Cortellesso's alleged admission into evidence before the state proved corpus delicti.

Before examining the first issue it is necessary to determine whether defendants have standing to challenge the warrantless search of the trailer and the seizure of its contents.

■ The defendants clearly have the burden of establishing their standing to challenge the admissibility of the seized evidence. *State v. Jardine*, 110 R.I. 491, 494, 293 A.2d 901, 903 (1972). Our review of the record indicates that defendants did not satisfy this burden.

Modern law on standing begins with *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Prior to *Jones*, standing to contest an unlawful search was narrowly restricted to those who had either a proprietary or possessory interest in the premises searched. The *Jones* Court effected a significant liberalization of the standing requirement. First, they establish the concept of automatic standing for a defendant charged with a possessory crime. In so doing, the Court eliminated the defendant's dilemma of having to gain standing to challenge the admissibility of evidence by claiming a proprietary interest in the very contraband the possession of which is the crime charged, only to have such damaging admissions introduced at trial.

Second, *Jones* explicitly broadened the class of persons protected by taking the standing that was already available to persons who had a proprietary or possessory interest in the premises and extending it to all who are legitimately on the premises.

Since 1960 the Court has continued to evolve its concept of standing. Two cases, *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) and *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh. denied* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979), have made some major modifications to the *Jones* concept of standing. In *Simmons* the Court held that whenever a defendant testifies at a suppression hearing to contest the legitimacy of a search or seizure, his testimony may not be used against him at trial. As noted by this court, this decision essentially has rendered the concept of automatic standing superfluous:

"The sole purpose for giving automatic standing to an accused possessor has been done away with by the *Simmons'* decision. The first of the alternative grounds for giving standing in *Jones* has been eliminated. It is pure surplusage." *State v. Jardine*, 110 R.I. at 495, 293 A.2d at 903 (footnote omitted).[1]

In *Rakas*, the Court retreated from its holding in *Jones* that any person "legitimately on the premises" has standing to challenge the admissibility of evidence

---

1. In *United States v. Salvucci*, —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d 619 (U.S.1980) the Court expressly overruled the concept of automatic standing established in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The Court noted, "We are convinced that the automatic standing rule of *Jones* has outlived its usefulness in this Court's Fourth Amendment jurisprudence." *United States v. Salvucci*, —— U.S. at ——, 100 S.Ct. at 2554. .

seized thereon. The Court held that this theoretical basis for standing was too "broad a gauge" for the measurement of Fourth Amendment rights and narrowed it to that class of persons with a legitimate expectation of privacy in the premises searched and/or evidence seized.

A synthesis of these cases on standing indicates that standing may be established by proving a possessory or proprietary interest and a legitimate expectation of privacy in the evidence seized or the property searched. Our review of the record in this case reveals that no such offers of proof were made. We concur with the trial justice's factual determination that "[a]ctually they [defendants] did not, at the time of the motion nor up to this point, allege any proprietary or any kind of interest [in the property searched and seized] * * *." Under the *Simmons* case, defendants could have testified regarding their interest in the evidence seized without any fear that their testimony could be used against them. Not having done so, they have no standing to challenge the warrantless search and seizure of the refrigerated trailer and its contents.

Pressing their appeal further, defendants argue that the prosecutor violated their Fifth Amendment rights against self-incrimination and their due-process rights under the Fourteenth Amendment by asking them why they had not told police their version of the incidents before trial.[2] During the trial the prosecutor asked Cortellesso twice and DiRaimo three times whether their testimony on the stand (to the effect that they had gone to Rudy's Market to buy, not to sell, meat) was the first time they had explained their activities at Rudy's Market. The defendants' counsel did not object to this line of questioning.

The simple answer to this argument is to point out that the constitutional challenge to such line of questioning should have been made by objection by counsel at trial. The record indicates that counsel made no objection at trial. While there may have been some confusion as a result of our decision in *State v. McGehearty*, R.I., 394 A.2d 1348 (1978), where we allowed a constitutional challenge to be raised by the defendant for the first time on appeal because of novel constitutional claims unappreciated by his counsel at the time of trial, we nevertheless in *State v. Pope*, 414 A.2d 781 (R.I.1980) affirmed our well-established rule that requires the raising of a constitutional issue at the trial level.

Here, defendants do not raise novel constitutional claims that were unappreciated by their counsel at trial but rather seek application of settled constitutional principles to the facts of their case. The constitutional challenge should have been brought by objection to the line of questioning complained of. We see no reason from the record before us to depart from our well-established rule. Thus, defendants may not challenge the questions complained of at this time.

Our refusal to consider this issue is, however, without prejudice to defendants

---

2. Pertinent parts of the transcript are as follows:

Cross-examination of Cortellesso:
"Q Now you seem to remember with great clarity the events of that day, June 10, 1976 and June 11. Did you ever tell this to the police before?
"A No, I did not."

* * * * * *

"Q And you never told this story until today when you took the witness stand, is that correct?
"A Uh, huh."

Cross-examination of DiRaimo:
"Q And you never told this story to anybody before about the incident and what happened here, did you? You never told the police this, did you?

"A I don't recall. They asked me questions and I can't recall what questions.
"Q Now this is the first time that you have come forward to tell this story?
"A Yes.
"Q About what happened?
"A Yes.
"Q You didn't say nothing that day that 'Gee, I am just here to help this guy out and get some meat,' you never said that before, did you?
"A To that policeman?
"Q Yes.
"A I don't recall."

attempting to raise the issue in some other appropriate proceeding.

Finally, defendants argue that the trial justice erred in denying their motion for a judgment of acquittal and in allowing Cortellesso's alleged admission into evidence before the state proved corpus delicti. Our review of the record does not substantiate these claims.

In assessing the correctness of the denial of the motion for a judgment of acquittal, "we, like the trial court, must without weighing the evidence or assessing the credibility of witnesses, view the evidence relied upon by the state in the light most favorable to the state, drawing therefrom all reasonable inferences consistent with guilt." *State v. Gianoulos*, R.I., 404 A.2d 81, 82 (1979). We agree with the trial justice that there was ample evidence in this case to give rise to a reasonable inference that Cortellesso and DiRaimo received stolen goods.

In regard to the introduction of Cortellesso's alleged admission, "we have ruled that it is not necessary to establish the so-called corpus delicti beyond a reasonable doubt before an admission can be received into evidence." *State v. Jardine,* 110 R.I. at 496, 293 A.2d at 904. As already detailed, there was other evidence in this case apart from Cortellesso's alleged statement that the crime charged had been committed. Thus, the admission of this alleged statement at trial was certainly permissible.

The defendants' respective appeals are denied and dismissed, the judgments of conviction appealed from are affirmed, and the cases are remanded to the Superior Court.