THE PEOPLE OF THE STATE OF NEW YORK, Respondent, JAMES EGAN, Appellant.

Fourth Department, January 24, 1980

APPEARANCES OF COUNSEL

*Fiandach & Fiandach (Edward Fiandach* of counsel), for appellant.

*Lawrence T. Kurlander, District Attorney (Sharon Stiller* of counsel), for respondent.

**OPINION OF THE COURT**

SIMONS, J. P.

Defendant has been convicted of murder, second degree, for aiding his wife, Mavis Egan, to kill her former husband, James Gerks. In submitting the issue of intentional killing to the jury, the court charged it that "a person is presumed to intend the natural and probable consequences of his act and if the consequences are natural and probable, you will not be heard to say that he did not intend them." The sense of this instruction was that if the jurors found defendant's acts caused the death of James Gerks, they must presume that he intentionally aided his wife in the murder. By so charging, the court denied defendant his constitutional due process right to be free from conviction unless the People proved beyond a reasonable doubt every fact necessary to constitute the crime charged (see *Sandstrom v Montana,* 442 US 510.)

The People's proof was circumstantial but we assume that the jury gave it the full weight that could reasonably be accorded to it (see *People v Benzinger,* 36 NY2d 29, 32). It established that defendant, Mavis and Gerks had been living together since September, 1976 in a house owned by Gerks' father. Originally, Mavis and Gerks were married but they were divorced in July, 1977 and in September, 1977 defendant and Mavis were married. Through marriage, divorce and remarriage the three continued living together until Gerks

was murdered on November 29, 1978. It was suggested that they did so in order that Gerks' father would be unaware of the divorce and continue to support them. Occasionally, and on November 29, 1978, a drinking acquaintance of the Egans, Vic Vyverberg, also slept in one of the bedrooms.

It is not disputed that on the night of the crime defendant, Mavis and Vyverberg had been drinking heavily. They returned home sometime after 10:30 P.M. and defendant brought out a .38 caliber revolver, allegedly to show it to Vyverberg. After doing so, he placed it on a table. Mavis Egan took the gun, went into an adjoining bedroom where Gerks was sleeping and shot him in the head, killing him. Vyverberg testified that he was unaware of all this, that when the three returned home on the night of the murder, he had another drink and then passed out. When he later woke up he saw defendant standing in his room. Defendant told him, "We blew him away"; and then, "Mavis was first number one hit woman in the world." The Egans and Vyverberg later disposed of the body in a rural area.

Vyverberg testified further that for some time before the murder the Egans had told him that they were being harassed by Gerks, that there was "shooting" going on around the house and that defendant said he had borrowed a .38 revolver for protection. Vyverberg suggested that the Egans contact a lawyer or have some "rough people" put the pressure on Gerks to stop the harassment. The week before the killing defendant told him that they were still having problems at the house but that they would soon be eliminated.

Defendant testified that when he and his wife returned to the house with Vyverberg after a night of drinking, Vyverberg asked to see his revolver. After showing it to him defendant placed the gun on the table while the three watched television. As defendant was adjusting the television set, he asked Mavis to put the gun away. When he did so, she asked, "Can I do it?" and he answered, "Yes, please put the gun away." He denied any knowledge that she intended to kill Gerks or that she may have understood his remarks as a direction to do so. He did not hear any shots because of the television noises, but shortly after this, his wife returned to the room and said, "Look at the mess, he is dead."

Police officers testified that the day after the crime defendant described the incident by telling them that as they watched television his wife asked him, "Can I do it now or am

I going to do it now?" and although defendant denied knowing what she was talking about, he responded, "Yes, go ahead and do it." She left the room with the gun and returned shortly saying, "It was done. He is dead or dying. You ought to see the mess."

Thus defendant admitted that the gun used to kill Gerks was his, that his wife had possession of it with his permission immediately before the killing, that he was in the next room at the time it happened, and that he helped to dispose of the body after Gerks died. The only question seriously disputed was whether defendant intentionally aided his wife in the murder, and the court's charge pre-empted the jury's decision on that critical issue.

It is a fundamental rule that due process of law protects an accused from conviction " 'except upon proof beyond a reasonable doubt *of every fact* necessary to constitute the crime with which he is charged' " *(Matter of Winship,* 397 US 358, 364 [emphasis added]; *Sandstrom v Montana,* 442 US 510, 520, *supra; Morissette v United States,* 342 US 246, 275; see, also, CPL 70.20; *People v Patterson,* 39 NY2d 288). Whether the prosecution has met this burden of proof or not is a question for the jury to determine against the defendant, not the court. If the court's instruction that the law presumes that a person intends the ordinary consequences of his voluntary acts reasonably may be interpreted by the jury as establishing a conclusive presumption of intent it infringes on the jury's function. If it may reasonably be interpreted to create a rebuttable presumption, it unconstitutionally shifts the burden of proof to the defendant *(Sandstrom v Montana, supra).*

We recognize that the charge of presumed intent is common in criminal trials. It is not unconstitutional per se, and we have approved many such charges, even after the *Sandstrom* decision, where the court has made it clear that the instruction describes only a permissible inference of fact on the issue of criminal intent which the jury may, but is not required to, draw from the evidence (see *People v Gray,* 71 AD2d 295). The danger risked and one judicially recognized in this State long before the Supreme Court's decision in *Sandstrom* (see *Stokes v People,* 53 NY 164, 177-179; *People v Cooke,* 292 NY 185, 189-190), is that if not so instructed the jury may conclude that the presumption is implied by law and that once the proof establishes a voluntary act, the necessary criminal intent is established by proof of the act. The charge in this

case was erroneous because it not only failed to advise the jury that it had a choice in the matter, but it went further, specifically stating that a finding of intent was mandatory because "if the consequences are natural and probable, you will not be heard to say that [defendant] did not intend them."

The People ask us to consider the charge as a whole and to weigh the portions of it on reasonable doubt, burden of proof and intoxication with that on presumed intent. They claim that these sections of the charge fully apprised the jury of the prosecution's burden to prove intent. The general instructions do not overcome the clear error in the court's instruction, however, because the jury might well interpret the erroneous presumption as a valid method by which the People satisfied their burden of proof beyond a reasonable doubt (see *Sandstrom v Montana,* 442 US 510, 518, n 7, *supra).* Moreover, although the instruction on intoxication informed the jury that intoxication could negative intent, it still remained possible for the jury, consistent with the instruction, to "presume" intent once they found against the defendant on the intoxication issue.

■ ■ The People also note that defendant did not except to the court's charge on intent and they contend therefore that the issue may not be considered on appeal. We may review the issue, whether preserved by timely objection or not, under our power to review in the interest of justice (CPL 470.15, subd 6, par [a]; *People v Gray,* 71 AD2d 295, *supra; cf. People v Michael,* 48 NY2d 1, 5-8; *People v Patterson,* 39 NY2d 288, 294-296, *supra; People v McLucas,* 15 NY2d 167), and we should review it although the trial preceded the *Sandstrom* decision (see *People v Patterson, supra; People v Gray, supra).* The erroneous instruction involved a critical element of the crime and the rules by which the jury was to decide defendant's guilt or innocence and it was not harmless (see *Sandstrom v Montana, supra,* pp 526-527; *Brotherhood of Carpenters v United States,* 330 US 395, 408-409; *Bollenbach v United States,* 326 US 607, 614-615; *People v Crimmins,* 36 NY2d 230, 237; *Stokes v People,* 53 NY, *supra,* at p 184; cf. *People v Thomas,* 71 AD2d 280 [1st Dept]; *People v Fournier,* 70 AD2d 491 [2d Dept]).

We have considered defendant's other points and only one requires comment.

■ After arraignment defendant made an omnibus motion which included motions to suppress his statement to the police

and evidence seized by them during the investigation. He claimed that the statement was involuntary because obtained in violation of his Fifth Amendment rights. The motion was denied after a *Huntley* hearing. After the court's ruling but before trial, defendant moved again to suppress his statement urging for the first time that it was inadmissible on Fourth Amendment grounds because it was procured after the police took him into custody without probable cause (see *Dunaway v New York,* 442 US 200). In denying the motion without a further hearing the court ruled that the police had "reasonable suspicion" to detain defendant for questioning (citing *People v Morales,* 22 NY2d 55) and that the motion was untimely. Because the application was made before the Supreme Court's decision in *Dunaway,* the hearing court did not decide the issue of probable cause, nor do we. The court properly denied the motion because defendant failed to establish "additional pertinent facts" warranting a further hearing (CPL 710.40, 255.20; *People v Selby,* 53 AD2d 878, affd 43 NY2d 791). We also note that a motion to suppress, based as this one was on Fourth, as distinguished from Fifth, Amendment grounds, must be supported by sworn allegations of fact (see CPL 710.60, subd 3, par [b]; 710.20, subd 3).

The judgment should be reversed and a new trial granted.

HANCOCK, JR., DOERR, WITMER and MOULE, JJ., concur.

Judgment unanimously reversed as a matter of discretion in the interest of justice and a new trial granted.