THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ELDRIDGE BARR, Appellant.

Fourth Department, May 23, 1980

## APPEARANCES OF COUNSEL

*Edward J. Nowak, Public Defender (Ann Pfeiffer* of counsel),
for appellant.

*Lawrence T. Kurlander, District Attorney (Glenda K. Bray-
man* of counsel), for respondent.

## OPINION OF THE COURT

SIMONS, J.

Defendant was indicted for murder second degree in
connection with the stabbing death of Samuel Burton. After a

jury trial he was convicted of manslaughter, first degree. Defendant's points on appeal require no discussion except for his contention that the court's charge was erroneous. The dissenters would reverse holding that defendant's due process rights were denied by the instruction that "a man intends the ordinary and natural consequences of his acts." (See *Sandstrom v Montana,* 442 US 510.) We hold otherwise.

It has long been an established rule of evidence in New York that criminal intent may be inferred from a person's acts but that the inference is no more than an inference of fact to be drawn by the jury from all the circumstances of the case *(Stokes v People,* 53 NY 164, 177-179; see, also, *People v Cooke,* 292 NY 185, 189-190; *People v Weiss,* 290 NY 160, 171). After the Supreme Court's decision in *Sandstrom,* the rule assumed constitutional dimensions when that court reversed a judgment of conviction of "deliberate homicide" because the trial jury had been instructed that " 'the law *presumes* that a person intends the ordinary consequences of his voluntary acts' " *(Sandstrom v Montana, supra,* p 512; emphasis added). The Supreme Court held that the instruction violated defendant's due process rights to be free from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged because the charge could be interpreted either as describing a conclusive presumption of intent, predicated solely on a jury finding that defendant committed the act, or as creating a rebuttable presumption, thereby shifting the burden to defendant to prove his innocence.

Since *Sandstrom (supra),* we have had several occasions to review the rule and we have set forth our views in detail in two opinions. In *People v Egan* (72 AD2d 239, 240) we reversed a conviction containing a "presumed" intent charge which also contained the instruction that "if the consequences are natural and probable, you [the jury] will not be heard to say that he [defendant] did not intend them." Manifestly, after finding defendant participated in the act causing death, the jury, if it followed instructions, was left with no choice but to presume criminal intent. Conversely, we approved a charge of "presumed" intent when the court also instructed the jury to decide the issue of intent, as an issue of fact, from defendant's speech and conduct and the circumstances surrounding his acts (see *People v Gray,* 71 AD2d 295, 298-299).

The test in each case is to examine the words actually

spoken to the jury and, interpreting them as a reasonable juror could interpret them, determine whether the charge describes an inference of fact the jury could draw or whether it describes an impermissible legal presumption (see *Sandstrom v Montana, supra,* p 514). There is one superior way of testing pudding and the District Attorney suggests that as a practical matter, the answer in this case is to be found in the jury's verdict. Thus, the District Attorney contends that the best proof that the jurors understood the court's charge as defining a permissible inference, rather than a legal presumption, is to be found in defendant's acquittal of the murder charge and his conviction of the lesser crime of manslaughter; the jury believed that the People had proved defendant committed the homicidal act but it was not constrained by the court's charge to presume from that act that defendant intended to cause death. The instructions of the court support this argument.

The court charged that "a man intends the ordinary and natural consequences of his act. It's not necessary to show a man's intent by his statements, his intent *may be inferred from his acts and from the surrounding circumstances.* You cannot probe into the mind of a person who is charged with a crime and extract his intentions at the time of the commission of the act. *Therefore, we must rely upon the facts and circumstances surrounding the act * * ** [Before convicting for murder second degree] you must make a finding that Mr. Barr did form in his mind a specific intent to kill *before the act was committed * * ** [I]n order to convict * * * of murder in the second degree you'd have to find beyond a reasonable doubt * * * [that] Eldridge Barr did intend to cause the death of Samuel Burton * * * If you find that these elements have been proven to your satisfaction beyond a reasonable doubt then, of course, your verdict * * * will be one of guilty of murder in the second degree" (emphasis added).

These instructions do not run afoul of *Sandstrom* (442 US 510, *supra).* The court did not refer to a presumption or to a "presumed" intent and it explicitly told the jury that intent "may" be "inferred", not only from defendant's acts, but also from the surrounding circumstances. Proof of intent did not depend upon proof of the act alone and the charge did not shift the burden of proof on that issue. I dare say that now that the *Sandstrom* rule has become law, Trial Judges will recast their charges on the issue of intent to include an

instruction on permissive inferences, but in this pre-*Sandstrom* trial, the court correctly instructed the jury on the law of New York and it did not deprive defendant of his right to due process under the *Sandstrom* decision *(supra).*

The judgment should be affirmed.

HANCOCK, JR., J. (dissenting). Defendant appeals from his conviction, after a jury trial, for first degree manslaughter (Penal Law, § 125.20, subd 1) in connection with the stabbing death of Samuel Burton on June 28, 1977 in Rochester. Defendant was charged with second degree murder (Penal Law, § 125.25). At trial defendant pleaded justification and also lack of intent to kill or to cause serious physical injury to the victim. Apparently anticipating difficulty with the issue of whether the defendant intended to cause death or serious bodily injury, crucial points in both the second degree murder and first degree manslaughter charges, defense counsel, requesting an instruction, stated: "I am very concerned that the court make it clear that *there may also be additional facts aside from the mere death of a victim showing the defendant's conscious objective was to kill the victim"* (emphasis added).

The court, however, instructed the jury that: "a person acts intentionally with respect to a result *or to conduct* described by a statute defining an offense when *his conscious objective is to cause such result or to engage in such conduct.* Members of the jury, *I charge you that a man intends the ordinary and natural consequences of his act.* It's not necessary to show a man's intent by his statements, his intent may be inferred from his acts and from the surrounding circumstances. You cannot probe into the mind of a person who is charged with a crime and extract his intentions at the time of the commission of the act. Therefore, we must rely upon the facts and circumstances surrounding the act * * * You may ask yourself how are you going to determine what a man's intent is? *You can only determine that by his acts and by his conduct. Sometimes, * * * acts speak louder than words. Intent is the secret and silent operation of the mind. Its only physical manifestation is the action of the individual in attempting to accomplish the things determined upon him"* (emphasis added). Defense counsel excepted to the charge as given.

The charge constitutes reversible error (see *Sandstrom v Montana,* 442 US 510; *United States v Robinson,* 545 F2d 301; *People v Cavallerio,* 71 AD2d 338, 344; *People v Thomas,* 71 AD2d 280). The vice of the charge is that the jury was told

only that "a man intends the ordinary and natural conse-quences of his act." They were not told that the instruction was permissive, i.e., that "they had a choice, or that they *might* infer that conclusion" *(Sandstrom v Montana, supra,* p 515; emphasis added). Instead of being couched in terms of an inference that might be accepted or rejected, the charge was delivered as a categorical and unambiguous declaration: "I charge you that a man intends the ordinary and natural consequences of his act." When reinforced by the statements that "acts speak louder than words" and the "only physical manifestation [of intent] is the action of the individual in attempting to accomplish the things determined upon him", the instruction, in my opinion, can only be taken as a direc-tion that if the consequences were natural and ordinary, the jury must find that the defendant intended them.

The sentence relied upon by the District Attorney—"It's not necessary to show a man's intent by his statements, his intent may be inferred from his acts and from the surrounding circumstances"—particularly in light of the reference in the next preceding sentence to "his conscious objective * * * to engage in such conduct," may be interpreted as an instruction relating to the issue of whether a man's actions were inten-tional not to whether he intended the consequences that flowed therefrom. The charge condemned by *Sandstrom (su-pra)* relates to whether the consequences of actions were intended not to whether the actions which produced the consequences were intentional.

Nor, contrary to the District Attorney's contention, does the acquittal on the murder charge establish that the jury inter-preted as permissive and not mandatory the court's charge on the intended consequences of a man's action. The jury, al-though interpreting the charge as mandatory, could have found that serious physical injury but not death was the ordinary and natural consequence of the defendant's conduct in stabbing the victim once during a fight in which the victim was attacking the defendant with a butcher knife. With such a finding, if the jury had interpreted the charge on intended consequences as mandatory, a conviction for manslaughter would necessarily have followed.

In view of the importance of the issue, the error in the charge was not harmless and defendant's conviction should be reversed.

CALLAHAN and MOULE JJ., concur with SIMONS, J.; CARDA-

MONE, J. P., and HANCOCK, JR., J., dissent and vote to reverse the judgment and grant a new trial in an opinion by HANCOCK, JR., J.

Judgment affirmed.