No. 51,821

STATE OF KANSAS, *Appellee,* v. ALBERT DALE WILLIAMS, *Appellant.*

(621 P.2d 423)

Opinion filed December 6, 1980.

*Howard Fick,* of Fick, Myers & Pottroff, of Manhattan, argued the cause and was on the brief for the appellant.

*Dennis C. Sauter,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Albert Dale Williams was convicted by a jury in

Riley County district court of first degree murder under the felony-murder rule, K.S.A. 21-3401, and was sentenced to life imprisonment. He brings a direct appeal to this court. The primary issue presented is whether the trial court erred in failing to conduct a second inquiry as to the defendant's competence to waive his constitutional right to the assistance of counsel, following certain conduct of the defendant outside of the courtroom after the first day of trial.

Pamela Parker was employed as a receptionist in the Chamber of Commerce office at Manhattan. That office was also the local office of the Western Union Telegraph Company and Mrs. Parker was authorized to handle Western Union business and to sign Western Union money orders. One of her duties was to remain in the office during the noon hour.

On January 31, 1978, other employees of the Chamber of Commerce found Mrs. Parker's body in a back room when they returned from lunch. She had been stabbed five times. A number of Western Union money orders were missing. Police found a knife at the scene and located heel impressions in the victim's blood on the floor of the office. The knife and the heel impressions were linked to the defendant. Williams cashed a $1000 stolen money order—signed by Pamela Parker—at the First National Bank in Manhattan on the same day. Williams was traced to Topeka where he was arrested on February 1, 1978 for a murder in Shawnee County. After trial there, he was returned to Riley County for trial on the charge of the murder of Mrs. Parker in the perpetration of aggravated robbery.

Williams first appeared in Riley County district court on this charge on June 26, 1979. Howard Fick, a practicing attorney of Manhattan, was appointed to represent him. Later, when the matter came on for preliminary hearing, Williams asked that he be permitted to represent himself. After inquiry by the judge, the motion was sustained and Williams was permitted to act as his own counsel during the hearing. Mr. Fick was present, sat at counsel table with the defendant, and was available should the defendant have decided that he wanted counsel.

Williams next appeared for arraignment before Judge Mershon on August 6, 1979. Mr. Fick was present. Williams stated that he wanted to represent himself. The judge then made extensive and comprehensive inquiries of the defendant, covering some 20

pages of the record, before accepting his waiver of counsel. Among the many things covered during this discourse are the following: Defendant understands the charge against him and the penalty for that offense; he understands that he has an absolute right to counsel, either retained or appointed; he is 24 years of age, and attended school to the 12th grade. He represented himself throughout the proceedings in Shawnee County, and he was convicted and sentenced there; he did have appointed "advisory" counsel. He had a mental evaluation in Shawnee County where he was found competent to stand trial and to represent himself. He is in good health and has never been treated by a psychiatrist or mental health professional. He is familiar with trial procedure, knows that objections may be lost or waived if not made contemporaneously, and understands the jury selection process. He has had no formal legal training. During this exchange, the judge said:

"Now, Mr. Williams, speaking in all frankness I do not feel that it would be to your best interests to not have an attorney . . . .

. . . .

". . . In my opinion I think you're making a grave and serious mistake."

The judge pointed out the ABA standard indicating that counsel for the accused is an essential component of the administration of criminal justice. He also pointed out many pitfalls for the untrained, and many advantages experienced counsel would provide. Williams, however, persisted and insisted that he be permitted to represent himself. The judge then made these findings:

"THE COURT: All right. After going over those things very carefully with you, Mr. Williams, which the Court felt was necessary, the Court after complete inquiry and after observing you, it does appear to me that you seem to be alert, that you do seem to understand your surroundings, that your answers to my questions have been lucid and reasonable ones, and you have persistently stated you do not wish to have a lawyer.

"THE DEFENDANT: Do not.

"THE COURT: Therefore, the Court will enter the following findings in this instance, that you have been clearly advised of your rights to assistance of counsel including your right to the assignment of counsel; the Court further finds that you are possessed of sufficient mental capacity, age, education and experience to enter an intelligent waiver to the right to the assistance of counsel. The Court further finds that you have had explained to you the nature and complexity and seriousness of the case including the risks and penalties involved and I believe you understand that.

"THE DEFENDANT: I do.

"THE COURT: The Court further finds that you possess the intelligence to

appreciate the risks and costs and consequences of the decision, therefore the Court further finds that the defendant in this case, Albert Dale Williams, has entered his voluntary and intelligent waiver of the assistance of counsel and the Court accepts the defendant's waiver."

The judge appointed Mr. Fick as a "standby" attorney for the defendant and directed him to be present at all hearings on motions and during the entire trial, counsel to sit with defendant at counsel table and to stand ready to assist the defendant at any time upon request. The judge directed the officers to remove defendant's shackles and handcuffs outside the presence of the jury and to take other measures for security so that the jury would not be prejudiced. He gave orders that defendant have access to statutes and law books, and he provided an avenue for the transmission of the defendant's motions to the clerk.

After the first day of trial, and as defendant was being escorted from the courthouse, he broke away and battered through a glass door with his head. He was knocked unconscious and sustained a severe laceration to his right little finger. He was taken to the hospital where 11 stitches were required to close the wound. The following morning, before coming into the courtroom, he asked to be taken to a restroom. After washing his hands, he battered the window with his head, breaking the window and cutting his head. Officers removed him from the window and again took him to the hospital where his wounds were stitched and treated. Outside of the courtroom he was unruly and profane, kicked the officers, and had to be strapped to the gurney while being transported to and from the hospital.

Following these occurrences, and on the second morning of trial, a hearing was held out of the presence of the jury. The State moved for an order requiring that the defendant be shackled during the remainder of the trial. The court heard a number of witnesses who described defendant's actions since the court recessed on the previous day. The witnesses described defendant's behavior, his hostility towards the prosecutor and the officers, and his statement that "as soon as the handcuffs come off him that it was all over with." Generally, the witnesses thought the defendant to be a danger to himself and others, and recommended that he remain in chains—leg irons, waist chain, handcuffs—in the courtroom. The defendant was described as lucid and competent but destructive and dangerous. One witness testified that as Williams was being placed in handcuffs for the trip

to court that morning, he said, "They better leave all this . . . on me or I'm gonna' get somebody." He had previously threatened the prosecuting attorney. Defendant's sister and a close friend were present throughout this hearing. The judge heard from the sister, the defendant, and the State's witnesses. He expressed extreme reluctance to order the defendant chained during trial, but in view of the defendant's attempts to flee, concluded that the handcuffs and waist chain should be removed but the leg irons should remain.

The defendant objected to any restraints. He said:

"I don't even want to go in there. I'll be just like I am right now. I'll jump up on that table and tell 'em I'm taking a fucking. I know I'm taking a fucking. You take these handcuffs off me, I'll do worse in there. I'm not playing. . . `. I mean this. . . .

. . . .

". . . I'm telling you if I go in there I will be very disruptive and I mean that."

The judge then ruled that under the circumstances he had no alternative but to order all restraints—leg irons, waist chain, handcuffs—left on the defendant. Trial proceeded with the defendant so restrained. After one witness testified, a noon recess was taken on the second day of trial. When court reconvened, the judge offered to order the handcuffs removed if the defendant would "behave." Defendant replied twice: "Leave 'em on." Defendant made similar responses later in the afternoon. On the following morning, defendant said that he would like to have the cuffs off, and the court ordered the cuffs and chain removed. After noon on the third day of trial, defendant stated that he was withdrawing his request to appear as counsel, and he asked that Mr. Fick take over as trial counsel from that point on. Mr. Fick, who had been present throughout the proceedings, then assumed the defense, conferred with the defendant, examined the remaining witnesses, reviewed the proposed instructions and made objections and suggestions in connection with them, and made the closing argument on behalf of the defense. A careful review of the record discloses that while the defendant was sometimes profane, insulting, and obstreperous at hearings in chambers, he limited such conduct to chambers and conducted himself at all times with propriety and decorum in the presence of the jury.

Defendant argues that it was error for the trial court to fail to inquire into his competence to waive the assistance of counsel in

the light of his behavior on the first night and the second morning of trial. He does not challenge the court's original finding of knowing and intelligent waiver of counsel; instead, he contends that when the court became aware of defendant's bizarre out-of-court conduct, the court should have conducted a second hearing and made a determination at that time of defendant's continued mental competence to continue his waiver of counsel.

As we have pointed out above, the trial court made a very thoughtful and careful record before allowing defendant to represent himself in the first instance. At the close of that hearing, the court found that the defendant was alert, aware of his surroundings, was lucid and reasonable, was possessed of sufficient mental capacity, age, education and experience to enter an intelligent waiver, and that the defendant had the intelligence to appreciate the risks and consequences of his decision. After the defendant had broken the glass door and window (which conduct is characterized by the State as escape attempts and by the defendant as suicide attempts), the trial court did conduct a lengthy hearing on the State's motion to require defendant to be shackled. The trial judge questioned four of the witnesses who had had an opportunity to observe the defendant as to his mental state; all four responded in substance that the defendant was alert and not mentally ill; that he understood what was going on; and that he was lucid and competent to proceed with trial. The judge also questioned the defendant personally before resuming the trial.

An accused has a constitutional right to represent himself. This was recognized in *Faretta v. California,* 422 U.S. 806, 45 L.Ed.2d 562, 95 S.Ct. 2525 (1975), and in *State v. Williams,* 226 Kan. 82, 595 P.2d 1104 (1979). The accused should be made "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." If an accused is to forego the assistance of counsel, he must do so "knowingly and intelligently." *Faretta,* 422 U.S. at 835. In *State v. Daniels,* 2 Kan. App. 2d 603, 586 P.2d 50 (1978), the Court of Appeals treated the matters of waiver of counsel and self-representation fully and set forth guidelines for the trial courts; these were carefully followed by the trial court here.

In 1966, the United States Supreme Court suggested, in *Westbrook v. Arizona,* 384 U.S. 150, 16 L.Ed.2d 429, 86 S.Ct. 1320

(1966), that competency to stand trial and competency to intelligently waive counsel involve different legal standards. The implications of *Westbrook* were discussed by the California Court of Appeals as follows:

"Commentators have interpreted *Westbrook* to mean that while a defendant may be competent to stand trial, he may not be competent to waive counsel (Silten & Tullis, *Mental Competency in Criminal Proceedings* (1977) 28 Hastings L.J. 1053, 1066). From this they derive the formula that 'a defendant must be free of mental disorder which would so impair his free will that his decision to waive counsel would not be voluntary' (*id.* at p. 1067)." *Curry v. Superior Court,* 75 Cal. App. 3d 221, 227, 141 Cal. Rptr. 884 (1977).

The court went on to hold, however, that the determination of whether there is an intelligent and competent waiver, an intentional relinquishment of a known right or privilege, is met "if the trial court makes the factual determination that the defendant is free of such a mental disorder and indicates, on the record, that he is aware of the consequences of his request." *Curry,* 75 Cal. App. 3d at 227. In the case before us, there is no question but that the trial court made that determination before permitting Williams to waive counsel and undertake self-representation. Although the judge did not expressly say "free of mental disorder," he impliedly found the defendant to be free of such disorder when he found him "alert" and possessed of "sufficient mental capacity" and "intelligence."

Once an initial determination is properly made that the defendant is competent to waive counsel, must additional determinations be made that such competency continues? Where, as here, the accused's conduct outside of the judge's presence is erratic, and such conduct is brought to the attention of the court, is the court required to hold a further hearing and make specific findings as to continued competency? We conclude that a specific hearing for that announced purpose is not required. The trial judge, in the first instance, must make a determination as to the accused's competence to waive the assistance of counsel. The judge must thereafter continually observe the defendant, and if he determines that the defendant's mental condition has deteriorated so that he is no longer mentally competent to waive counsel or conduct his defense, then the judge is obligated to take such action as may be required to insure a fair trial. The matter, however, is one vested in the sound discretion of the trial judge. Here the record shows that the trial judge fully understood his

responsibilities. He closely monitored the defendant; he inquired at length of witnesses as to defendant's state of mind; he talked at length with the defendant before proceeding with trial; he exhibited continuing concern as to the defendant's mental condition.

Once a trial court makes a determination that a defendant is competent either to waive counsel or to stand trial or both, the court is under a continuing responsibility to observe whether that competency continues. It is impossible, however, to draw up a standard as to when a court must make a further inquiry or hold a further hearing or make a further determination on the record as to the defendant's continued competency, and we will not attempt to do so. In the absence of a specific finding to the contrary, we will presume that a trial court finds competency to be continuous throughout trial, and deems further hearing on the issue unnecessary. Circumstances vary greatly from case to case. Whether a further hearing is needed is a matter which must be left to the sound discretion of the trial court, and each case must be viewed in the light of the facts at hand. Based upon a careful review of this record, we find no abuse of discretion here; obviously, the trial court found that this defendant continued to be lucid and competent, and the record fully supports that finding; no further hearing was necessary. We have carefully reviewed the authorities relied upon by the defendant but do not find them persuasive. We find no error.

Defendant contends also that it was error for the trial court to order him to be shackled during trial, arguing that if shackles had to be used, then it was clear that he was not competent to proceed with trial.

Generally, "the rule is that freedom from handcuffs during the trial of a criminal case is an important component of a fair and impartial trial." *State v. Yurk,* 203 Kan. 629, 631, 456 P.2d 11 (1969). Freedom from shackles during trial is the norm and a defendant in a criminal case should not be tried while in handcuffs, leg irons, or other shackles except in unusual, compelling, and exceptional circumstances. Where shackles or physical restraints are employed, the record should clearly reflect the reason why restraints are ordered. Ordinarily, if the record does not show disruption of trial or other obvious reasons, the trial court should hold a hearing, preserve the evidence by means of the

record, and state the reasons for ordering the restraint. See *State v. Stewart*, 276 N.W.2d 51 (Minn. 1979); *People v. Duran*, 16 Cal. 3d 282, 127 Cal. Rptr. 618, 545 P.2d 1322 (1976); and Annot., 90 A.L.R.3d 17, § 11. When exceptional circumstances are present and the trial judge has substantial reason to believe that the defendant, if not physically restrained, will harm himself or others in attendance at trial, or will be so disruptive as to prevent the trial from proceeding, the judge in his discretion may order the minimum restraints necessary. We emphasize that circumstances justifying the use of shackles, handcuffs or other physical restraints on the defendant during trial are extremely rare. Trial courts should order restraints only when it becomes apparent that other means will not be effective.

The trial judge in the case at hand made a careful record of the proceedings. He expressed reluctance to impose restraints, and ordered only the least restrictive restraints required. He directed that they be discontinued when it became apparent that restraints were no longer necessary. The trial judge exercised his discretion carefully. We find no abuse.

There is a wide variety in the situations in which shackles or other physical restraints are employed. They may upon proper occasion be employed to prevent violence and to protect the accused or others, to prevent escape, or to restrain the obstreperous or disruptive defendant. A defendant who threatens violence, or who poses an escape threat, or who tries to disrupt and prevent the trial, may be extremely intelligent and mentally alert, in control of all of his faculties, but bent on mischief. The mere fact that shackles or restraints are employed is not necessarily related to the competency of the defendant. In this case shackles were not ordered because of defendant's incompetency.

Next, defendant claims that the prosecutor violated the rules of evidence by the use of leading questions and hearsay evidence to such an extent that defendant was denied his right to a fair trial. There were no contemporaneous objections, and therefore the errors were not preserved for appellate review. See K.S.A. 60-404 and cases cited thereunder. The trial court properly advised the defendant that if he chose to represent himself, he would be held to the same standards as a lawyer, and that some objections would be waived or lost and not available to him at a later date if he failed to make them at trial. The defendant stated that he under-

stood these statements. As the court stated in *Faretta:* "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " 422 U.S. 835 at n. 46. We have examined the trial transcript. Though many leading questions were asked, and some hearsay evidence was received, that is true also in many trials conducted by counsel; and although the form of the evidence received here was objectionable, the evidence itself was admissible and could have been presented in proper form. Defendant was not denied a fair trial.

The prosecuting attorney, in concluding his jury argument, said: "I have no doubt in my mind that this defendant killed Pamela Parker and is guilty of the crime charged." Defendant now contends that this was reversible error. We agree that the statement was improper. *State v. McClain,* 216 Kan. 602, 607, 533 P.2d 1277 (1975). A prosecutor should not inject his personal opinion into the argument. However, no contemporaneous objection was made, although defendant was represented by counsel at that stage of the proceedings, and it has long been our rule that reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument to the jury where no objection is lodged. *State v. Johnson,* 210 Kan. 288, 502 P.2d 802 (1972); *State v. McDaniel & Owens,* 228 Kan. 172, 612 P.2d 1231 (1980). Even if objection had been lodged, we are convinced that the comment would not have constituted reversible error. The prosecution's case—even without any evidence adduced by leading questions—was strong. The single statement was not so prejudicial that it requires reversal.

Finally, defendant complains of error in the giving of an instruction on the presumption of intent. The instruction given, however, contained the following language: "This presumption does not alter in any way the presumption of the defendant's innocence and the burden of proof upon the State to prove the defendant guilty beyond a reasonable doubt." The instruction does not violate the rule of *Sandstrom v. Montana,* 422 U.S. 510, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979). See *State v. McDaniel & Owens,* 228 Kan. 172, and *State v. Egbert,* 227 Kan. 266, 267, 606 P.2d 1022 (1980).

The judgment is affirmed.