**STATE**

v.

**Elizabeth AMADO.**

**No. 79–110–C.A.**

Supreme Court of Rhode Island.

Aug. 6, 1981.

---

Dennis J. Roberts, II, Atty. Gen., Barry N. Capalbo, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Lise Gescheidt, Asst. Public Defender, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant, Elizabeth Amado, from a conviction of second-degree murder by a jury of the Superior Court for Providence and Bristol Counties.

At approximately 9:30 p. m. on July 18, 1977, two police officers of the Providence police department responded to a call at 8 Harvard Avenue. There, in a second-floor apartment, they observed the victim, Joseph Amado, lying in a pool of blood while his wife, defendant Elizabeth, was straddling him. The defendant was apparently trying to stop the bleeding coming from a stab wound in the area of Joseph's left shoulder. The officers asked defendant what had happened, and the defendant responded, "I stabbed him." One of the officers picked up a butcher's knife lying next to the victim, which knife defendant later admitted was the weapon she had used to wound Joseph fatally.

A third officer arrived at the apartment and proceeded to advise defendant of her constitutional rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966). Again, defendant admitted stabbing her husband, adding that he had come home that evening in a drunken and abusive condition. Subsequently, defendant was arrested and taken to the police station. Here, defendant was advised of her rights a second time and was interrogated after signing a rights-waiver form. The defendant offered a statement in which she elaborated on her husband's intoxicated condition and on her own role in the stabbing. Meanwhile, Joseph Amado died from the stab wound. Thereafter, defendant was indicted for second-degree murder.

In addition to offering testimony from two of the officers who were present at the Harvard Avenue apartment and from the detective who interrogated defendant, the state offered the testimony of one of the Amados' neighbors who had appeared in the apartment just after the incident and had told a second neighbor to call the police. The prosecution also presented the state medical examiner as a witness. At the conclusion of the state's case, defendant moved for judgment of acquittal, arguing that no evidence of premeditation had been introduced. This motion, however, was denied.

Thereafter, the defense attempted to show lack of intent and of premeditation by submitting the expert testimony of two psychologists, one of whom had conducted extensive interviews with defendant while defendant was under the influence of the

drug sodium amytal.[1] Tapes of these interviews were played for the jury.

After all the evidence was presented, the trial justice charged the jury. The prosecution requested the trial justice to instruct the jurors that "[t]here is a presumption that a person intends all the natural and probable consequences of his voluntary acts." In order to consider this requested instruction properly, it is necessary to reproduce a large portion of this charge:

"In addition to the oral testimony and the physical exhibits, you should draw from the evidence any reasonable inferences which you might feel are warranted. * * * In other words, if you feel that certain facts have been established to your satisfaction, you might reasonably infer that other facts must necessarily be so. That is what we call drawing an inference.

" * * *

"As I told you at the outset, Ladies and Gentlemen, there are certain basic principles of the criminal law which you must not lose sight of. Number one is the presumption of innocence. This woman, Mrs. Amado, is presumed to be innocent as she sits there at this very moment. * * And the only time that that presumption of innocence vanishes, if it ever does, is when you are convinced that the State of Rhode Island has proven her guilt as to each and every element of the offense beyond a reasonable doubt. Then and only then does the presumption of innocence vanish. * * * It [the indictment] is an accusation and it is incumbent upon the State of Rhode Island to prove those accusations or those allegations beyond a reasonable doubt.

" * * *

"Now, murder, very simply defined, is the unlawful killing of a human being with malice aforethought or premeditation. In other words, the person must have *thought* about killing. Must have thought about it. An evil design or plan,

an [sic] acted upon that thought and actually consummated the evil plan or design and killed the person.

"Now, murder in the second degree as opposed to murder in the first degree is simply a matter of time. If you find that this woman had malice aforethought and premeditated or thought about killing her husband for a mere moment or less, then it is murder in the second degree. The amount of time required for murder in the second degree is a mere moment or less. But, the state, in order to prove her guilty beyond a reasonable doubt, must prove to you that on the 18th day of July 1977 she killed her husband with malice aforethought or premeditation. This premeditation had to last for a moment or less.

" * * *

"[b]ased upon how you view the evidence, how you determine the facts in this particular case, you could find Elizabeth Amado guilty of manslaughter * * *.

" * * *

"Accidental homicide is an unintentional act, as distinguished from homicide in self-defense, which is a positive and intentional act. It has been alleged in this particular case that this was an accidental killing. Unintentional and accidental.

" * * *

"In order to convict Elizabeth Amado of any crime, you must have been satisfied by the evidence introduced by the state that this was not an accidental homicide.

"You must always keep in mind that the defense has, and had, no obligation to prove anything; therefore, you may not decide this case by weighing the evidence introduced by the defense against the evidence introduced by the state. Then question always remains whether the state has proven guilt beyond a reasonable doubt.

"*There is also a presumption that a person intends all of the natural and*

---

1. Sodium amytal aids the user in recalling events that might otherwise be forgotten or *blocked by the subconscious.*

*probable consequences of his voluntary acts.*

"Now, after going over all of the evidence in this particular case * * *." (Emphasis added.)

The defendant now raises one assignment of error: whether the instruction "there is also a presumption that a person intends all of the natural and probable consequences of his voluntary acts" violates the Fourteenth Amendment requirement that the prosecution prove every element of the offense of murder beyond a reasonable doubt when intent is an element of the crime charged.

In raising this issue, defendant principally relies on the Supreme Court's holding in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)—a case decided seven months after defendant's trial and conviction. However, before addressing the issue in this case, we must first determine whether we may consider this question on direct appellate review because of defendant's failure to take objection to this instruction at trial.

## I

■ Rule 30 of the Superior Court Rules of Criminal Procedure states in pertinent part:

"No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

We have stated that a defendant's failure to comply with Rule 30 and to make a specific objection to the proffered instruction prevents her from raising this objection on appeal. *Infantolino v. State*, R.I., 414 A.2d 793, 795 (1980); *State v. Pope*, R.I., 414 A.2d 781, 786 (1980); *State v. McGehearty*, R.I., 394 A.2d 1348, 1351 (1978).

The defendant argues, however, that the issue raised concerns a violation of defendant's basic constitutional rights, regarding whether the state was relieved of its burden to prove, beyond a reasonable doubt, that defendant intended to kill her husband or whether defendant was left with the bur-

den of proving that she lacked this intent. *See Sandstrom v. Montana*, 442 U.S. at 524, 99 S.Ct. at 2459–60, 61 L.Ed.2d at 51. Intent was a crucial element in this case, and the due-process clause of the Fourteenth Amendment requires the state to prove every fact necessary to constitute the offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Moreover, any instruction that effectively shifts the burden of proof of an essential element of the crime to a defendant is impermissible under the due-process clause. *See Mullaney v. Wilbur*, 421 U.S. 684, 704, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508, 522 (1975). It is a well-settled principle of law that when a basic constitutional right is in issue, we will review the alleged error notwithstanding defendant's failure to make a timely objection at trial if she meets two requirements. First, the record must show that failure to object was not a deliberate trial tactic. Second, the error complained, of, although involving a basic constitutional right, must consist of more than harmless error. *State v. McGehearty*, 394 A.2d at 1352; *see generally* 14 Suffolk U.L.Rev. 819, 826 (1980).

## A

■ This court will review an "appeal from the judgment of conviction, rather than upon post-conviction proceedings if the existence of [these requirements is] ascertainable from the record * * * without resort to an evidentiary hearing." *State v. McGehearty*, 394 A.2d at 1352. The first of these requirements is ordinarily met when the defendant raises "novel constitutional claims that were unappreciated by his counsel at trial," *State v. Duggan*, R.I., 414 A.2d 788, 791 (1980); *see State v. Reis*, R.I., 430 A.2d 749, 754 (1981); *State v. DeWitt*, R.I., 423 A.2d 828, 830 (1980); *State v. Robalewski*, R.I., 418 A.2d 817, 825 (1980); *State v. Cortellesso*, R.I., 417 A.2d 299, 302 (1980), or when "the rule in effect at the time of trial did not comport with * * * due-process guarantees." *State v. Caron*, R.I., 423 A.2d 823, 826 (1980). Similarly, we shall be inclined to find no deliberate bypass clear

from the record when a case decided after the defendant's trial announces a change in the law altering the constitutional standard relied on by trial counsel. *See State v. Reis*, 430 A.2d at 755.

After closing scrutinizing the record, we find that even though failure to object to the instruction was a procedural default and the issue was not preserved for appeal, it is proper to address defendant's claim. The question is, therefore, properly before us.

■ It is arguable that defense counsel should have appreciated the possibility that the objectionable instruction would be inconsistent with holdings in a number of cases, including *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); and *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).[2] However, a decision dismissing defendant's appeal because *Sandstrom* might have been anticipated would undermine the "deliberate bypass" standard our cases have developed. We expressly rejected application of a stricter test in *State v. McGehearty*, 394 A.2d at 1352.[3] *See Mastracchio v. Houle*, R.I., 416 A.2d 116, 120 (1980). Until the *Sandstrom* decision, the Supreme Court had never held that instructions such as the one in issue here violated the mandate of the Fourteenth Amendment. The Montana Supreme Court had reasoned that this language neither shifted the burden of persuasion to a defendant nor relieved the state of its burden of proof. *State v. Sandstrom*, 176 Mont. 492, 497, 580 P.2d 106, 109 (1978), *rev'd*, 442 U.S. 510, 99 S.Ct. 2450, 61

L.Ed.2d 39 (1979). Given this set of circumstances, it is unlikely that trial counsel in the instant case chose to "sandbag" the judicial process and to delay raising this issue until an appeal became defendant's only option. Therefore, we are able to find that defendant did not waive her right to make this objection on appeal.

### B

Under our rule in *McGehearty*, we must also be satisfied that if error has occurred, it is harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710–11 (1967); *State v. Robalewski*, 417 A.2d at 824. In this case, however, we have no difficulty in concluding that if error was committed, it was not harmless.

■ The challenged instruction bears directly on the central issue—whether defendant possessed the intent to kill and, for second-degree murder, the added element of malice aforethought or premeditation. If the instruction affected the jurors in the manner alleged by defendant, then the jurors may have found these elements by connecting them with the undisputed fact that defendant controlled the knife that caused her husband's death. Consequently, if in fact the charge could have had such an effect on the jurors, the error would be prejudicial. *See State v. Sandstrom*, Mont., 603 P.2d 244, 245 (1979); *People v. Getch*, 50 N.Y.2d 456, 465, 407 N.E.2d 425, 429, 429 N.Y.S.2d 579, 583 (1980); *State v. Savage*, 94 Wash.2d 569, 577, 618 P.2d 82, 88 (1980).

### II

■ The state concedes, and we find, that the challenged instruction in the in-

---

2. Indeed, these cases formed the basis upon which a unanimous Supreme Court held that instructions like the one challenged here are not permitted under the due-process clause. *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459–60, 61 L.Ed.2d 39, 51 (1979).

3. The stricter standard we rejected was the "cause-and-prejudice" test established in *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). This standard was applied to federal habeas corpus review cases

involving noncompliance with state contemporaneous-objection rules in *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, 608 (1977). Alternatively, we elected to use the "deliberate bypass" test articulated in *Fay v. Noia*, 372 U.S. 391, 438–39, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837, 868–69 (1963), despite more recent limitations on the use of this test. *See* 14 Suffolk U.L.Rev. 819, 824 (1980).

stant case is substantially identical to the defective charge given in *Sandstrom*. The *Sandstrom* trial justice had stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom v. Montana*, 442 U.S. at 512, 99 S.Ct. at 2453, 61 L.Ed.2d at 43. Furthermore, the critical inquiry in both Sandstrom's trial and this defendant's trial was the question of whether the accused possessed the requisite *mens rea*. Thus, the *Sandstrom* Court's reasoning and conclusions must of necessity underlie our own decision.

The *Sandstrom* Court found two significant problems with the charge in question. First, the Court found that the jurors may have interpreted the charge "as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption." *Id.* at 517, 99 S.Ct. at 2456, 61 L.Ed.2d at 47. Such a charge was condemned by the Court because it had the effect of relieving the prosecution of its burden to prove the element of intent beyond a reasonable doubt. Second, the Court determined that the instruction may have shifted the burden of proof to the defendant in the minds of the jurors. *Id.* In essence, a juror may have thought that Sandstrom had to prove that he did not possess the intent to kill by more than "some" evidence once the state proved that he had voluntarily committed the act.[4]

The state, however, argues that we must not read the challenged statement in isolation, but instead we must consider the charge in its entirety. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973); *State v. Caron*, R.I., 423 A.2d 823, 827 (1980). It has also been pointed out that the *Sandstrom* opinion stressed that the questioned instructions were made without qualifications. *People*

*v. Getch*, 50 N.Y.2d 456, 464, 407 N.E.2d 425, 428, 429 N.Y.S.2d 579, 583 (1980). Additionally, we note that a number of post-*Sandstrom* decisions have sustained charges containing conclusive or burden-shifting instructions after the courts analyzed the context within which the presumption was used and found the harmful impact diminished by explanatory language. *See, e. g., Jacks v. State*, Ind., 394 N.E.2d 166, 175 (1979); *State v. Williams*, 228 Kan. 723, 731, 621 P.2d 423, 431 (1980); *People v. Gray*, 71 A.D.2d 295, 299–300, 423 N.Y.S.2d 66, 69 (1979), *appeal denied*, 49 N.Y.2d 804, 426 N.Y.S.2d 1033, 403 N.E.2d 462 (1980).

■ Therefore, it becomes necessary to look carefully at the content of the trial justice's charge. In reviewing these instructions, we judge them on the basis of how a reasonable juror could have interpreted them. *Sandstrom v. Montana*, 442 U.S. at 514, 99 S.Ct. at 2454, 61 L.Ed.2d at 45; *see State v. Caron*, 423 A.2d at 827. Early in the charge the court gave a general explanation concerning how the jurors might infer an unknown fact from a known fact. The trial justice explained that the presumption of innocence attaches to every defendant. The justice explained several times that the state had the burden of proving each element of the crime beyond a reasonable doubt. The concept of malice aforethought and the distinctions between murder, manslaughter, and accidental homicide were conveyed to the jurors. Finally, just before giving the challenged instruction concerning the presumption of intent, the trial justice stated that defendant was not required to prove anything.

Initially, we recognize the difference between instructions that qualify or explain how the jurors should interpret a potentially impermissible instruction and supplemen-

4. By the term " 'some' evidence" the Court was referring to the distinction between the burden of production and the burden of persuasion. The state argued that, even if viewed as mandatory, the instruction was rebuttable by the defendant's introduction of "some" contrary evidence. Therefore, asserted the state, the charge merely placed a burden of production on the defendant. The Court, however, de-

clined to address the propriety of using instructions that merely place a burden of production on a criminal defendant. The Court determined that a reasonable juror would not necessarily appreciate this distinction and might interpret this instruction as placing a burden of persuasion on the defendant. *See Sandstrom v. Montana*, 442 U.S. at 515, 99 S.Ct. at 2455, 61 L.Ed.2d at 45.

tary instructions that correctly assign the burden of proof but do not directly alter an otherwise improper instruction. *See People v. Getch*, 50 N.Y.2d at 464, 407 N.E.2d at 429, 429 N.Y.S.2d at 583. What was said in *Sandstrom* becomes particularly relevant in this context:

"The potential for these interpretations of the presumption was not removed by other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. * * * But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that although intent must be proved beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt." *Sandstrom v. Montana*, 442 U.S. at 518–19 n.7, 99 S.Ct. at 2456 n.7, 61 L.Ed.2d at 47 n.7; *see People v. Egan*, 72 A.D.2d 239, 243, 424 N.Y.S.2d 546, 549 (1980).

With the exception of the instructions on the presumption of intent, the trial justice correctly stated the law to the jurors. All but one of these instructions, however, failed to qualify the effect of the erroneous charge. This one exception, which instructed the jurors that defendant had no obligation to prove anything, may have mitigated the burden-shifting effect to the challenged portion of the charge which almost immediately followed. But neither this instruction nor any other instruction lessened its peremptory effect with regard to the issue of intent. It is clear therefore that the trial justice gave a binding and unqualified instruction on the question of intent which could not be ignored by the jurors.

The challenged instruction was made without any indication that the presumption could be rebutted, *see Skrine v. State*, 244 Ga. 520, 521, 260 S.E.2d 900, 901 (1979), or that certain circumstances would allow the jurors to ignore this presumption. *See Jacks v. State*, 394 N.E.2d at 175.[5] Despite general statements regarding how the jurors might draw an inference, the jurors were never informed they had a choice concerning the presumption of intent. In short, nothing in the entire charge adequately neutralized or overcame the compulsory nature of this instruction.

The state has brought a number of cases to our attention arguing that these cases dispose of the issue in its favor. We find the challenged instructions in these cases distinguishable from the one at issue here. In *Gagne v. Meachum*, 602 F.2d 471 (1st Cir.), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979); *People v. Barr*, 75 A.D.2d 14, 428 N.Y.S.2d 116, *appeal denied*, 50 N.Y.2d 999, 431 N.Y.S.2d 1035, 409 N.E.2d 1005 (1980); and *People v. Green*, 77 A.D.2d 665, 430 N.Y.S.2d 150 (1980), the trial courts used qualifying language that was directly tied in with the presumption instruction.

In *People v. Thomas*, 50 N.Y.2d 467, 407 N.E.2d 430, 429 N.Y.S.2d 584 (1980), the trial court used a *Sandstrom* type of charge

---

**5.** Some courts have imposed more rigid requirements on the language utilized in qualifying *Sandstrom*-type presumptions. One court has held that a statement that the presumption may be rebutted is inadequate if the court neglects to explain how the presumption may be rebutted. *Holloway v. McElroy*, 474 F.Supp. 1363, 1367 (M.D.Ga.1979), *aff'd*, 632 F.2d 605 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 3019, 68 L.Ed.2d —— (1981). Another court has held that the statement "[i]n the absence of evidence to the contrary [of the presumed fact], the presumption must prevail" used as qualifying language was inadequate to cure the impact of the conclusive-presumption instruction when the jurors were not informed that despite the absence of evidence to the contrary, they were free to reject the presumption. *State v. Savage*, 94 Wash.2d 569, 579, 618 P.2d 82, 89 (1980).

vaguely qualified by a weak admonition that the jurors take into consideration all the circumstances involved when deciding the issue of intent. The defendant failed to object to this instruction at trial. The *Thomas* court observed that the type of charge used in *Sandstrom* had been condemned by the New York courts for over a century. Therefore, in the face of settled precedent, defendant's failure to object was fatal under the New York contemporaneous-objection rule. *Id.* at 471–73, 407 N.E.2d at 432–33, 429 N.Y.S.2d at 586–87.

The instructions in this case did not adequately qualify the presumption instruction that is forbidden by the due-process clause. Nonetheless, we realize that it is still necessary to instruct the jury on drawing permissive inferences, particularly as they relate to the issue of intent. Therefore, we offer the following instruction written by a justice of the Washington Supreme Court:

> "It is not necessary to establish intent by direct and positive evidence, but intent may be established by inference in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case." *State v. Savage*, 94 Wash.2d 569, 583, 618 P.2d 82, 91 (1980) (Hicks, J., concurring).

Because we find that other instructions in the charge did not overcome the constitutional defects in the challenged statement of the trial justice, we must order a new trial.

Accordingly, the defendant's appeal is sustained, the judgment of conviction is reversed, and the case is remanded to the Superior Court for further proceedings.

WEISBERGER, Justice, concurring.

In light of the opinion of the Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), I agree that the result reached by the majority was inevitable and I concur therein. However, I have a few comments that I should like to add in connection with *State v. McGehearty*, R.I., 394 A.2d 1348 (1978), and the implications of *Sandstrom.*

First in regard to *McGehearty*, I agree that in a situation like the one in the case at bar, when counsel could not have reasonably foreseen a holding of this court or of the Supreme Court of the United States upon which to base a constitutional challenge, a defendant should not be precluded from raising a novel constitutional claim for the first time on appeal. However, upon reflection, in future cases in which a constitutional issue is sought to be raised, if counsel should have been aware of such issue at the time of trial and nevertheless fails to preserve the issue for review, I would advocate that this court decline to review such a point, whether or not a "deliberate bypass" or "trial strategy" has been discerned from the record. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In respect to the implications of *Sandstrom*, I believe that in any event this case sounds the deathknell of the use of the term "presumption" in criminal cases. This process began in *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), when the Court assumed that Congress could not constitutionally establish a mandatory inference bearing on an element in a criminal case. Relying upon the holding in *Tot*, we recognized in *In re Vincent*, R.I., 413 A.2d 78 (1980), that a statutory presumption was merely a legislatively authorized inference and that such presumptions are permissive rather than mandatory. We stated that the trier of fact, judge or jury, is free to accept or reject the inference in each case. *Id.* 413 A.2d at 81; *State v. Neary*, R.I., 409 A.2d 551, 555 (1979).

As a consequence, the use of the term "presumption," with its connotation of mandating that an inference be drawn creates unnecessary confusion in the minds of jurors, to say nothing of appellate courts. Therefore, I would suggest that the use of the term "presumption" in criminal jury instructions be abandoned and that the term "inference" be substituted therefor.[1]

---

1. Of course, this substitution would not apply to the presumption of innocence to which the Supreme Court of the United States is fully devoted. *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978).

By casting the instructions in terms of permissive inferences, the trial justice avoids not only the danger of appearing to remove a factual issue from the consideration of the jury, *see McFarland v. American Sugar Refining Co.*, 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899 (1916), but also avoids the burden-shifting connotations that accompany presumptions. For an interesting analysis of this subject, *see* Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity*, 92 Harv.L.Rev. 1187 (1979); *also see* 9 Wigmore, *Evidence* § 2491 (Chadbourn rev. 1981).